CUNNINGHAM v DEARBORN BOARD OF EDUCATION

Docket No. 216170. Submitted December 12, 2000, at Detroit. Decided July 6, 2001, at 9:05 A.M.

Denise Cunningham brought an action in the Wayne Circuit Court against the Dearborn Board of Education, her employer, alleging sex discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*, with respect to the defendant's refusal to provide favored work to the plaintiff that would have been consistent with restrictions placed by her physician because of her pregnancy, whereas the defendant offers favored work to employees who sustain work-related disabilities that qualify them for worker's compensation. The court, Dalton A. Roberson, J., granted summary disposition for the defendant, ruling that the plaintiff failed to establish a prima facie case of sex discrimination. The plaintiff appealed.

The Court of Appeals *held*:

The Civil Rights Act prohibits employment discrimination based on sex and defines "sex" to include pregnancy. The defendant's policy of extending favored work to employees who sustain work-related disabilities that qualify them for worker's compensation, but not to employees who sustain disabilities not related to work, such as pregnancy, does not constitute sex discrimination under the Civil Rights Act. The plaintiff failed to establish a prima facie case of sex discrimination inasmuch as she was not similarly situated with employees who sustain work-related disabilities and she was accorded the same rights as employees who sustain disabilities not related to work.

Affirmed.

CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — SEX — PREGNANCY.

An employer does not discriminate against an employee on the basis of sex or pregnancy in making favored work available to employees who sustain work-related disabilities that qualify them for worker's compensation, but not to employees who sustain disabilities not related to work, such as pregnancy (MCL 37.2201[d], 37.2202[1][a]).

*Wahl & Rivers, P.C.* (by *Beth M. Rivers*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec* and *Suzanne P. Bartos*), for the defendant.

Before: GRIFFIN, P.J., and HOLBROOK, JR., and MURPHY, JJ.

GRIFFIN, P.J. Plaintiff appeals as of right an order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm.

I

Since 1991, plaintiff has worked for defendant as a Custodian C. At all relevant times, defendant had promulgated and distributed a job description for its Custodial C (Custodian C) position. The "performance responsibilities" contained in the Custodian C job description are as follows:

> 1. Perform cleaning duties as outlined by the Building Engineer including but not limited to: classrooms, rest rooms, shower and locker rooms, offices and other areas of the school building.
> 2. Perform minor repairs to school fixtures such as doors, light fixtures, window shades, desks and other furniture, etc.
> 3. Perform outside cleaning of building and grounds as outlined by the Building Engineer such as snow shoveling, grass cutting, window cleaning and policing grounds and parking area.
> 4. Assist in preparing of athletic fields.
> 5. *Operate mechanized custodial equipment such as vacuums, hand scrubber, auto scrubber, carpet shampooers, etc.*

6. *Move and rearrange school furniture as directed by the Building Engineer.*

7. Lock and unlock building to provide security and entry of groups using the building.

8. Maintain manual and mechanized custodial equipment and report needed repairs to Building Engineer.

9. Maintain supplies and reports needs to Engineer.

10. *Remove trash to outside containers.*

11. *Replace burned out lamps using step ladders, extension poles or scaffolding.*

12. Work cooperatively with other employees in performance of project cleaning.

13. Report cleaning or safety problems to Building Engineer.

14. Scrub and refinish floors during the school year to maintain protection of hard surfaces and minimize the need for floor stripping during summer cleaning. [Emphasis added.]

The above duties of a Custodian C employee were the subject of a union contract negotiated between defendant and the Dearborn Federation of School Employees.

In her deposition, plaintiff explained the day-to-day duties of a Custodian C position as follows:

*Q.* Do you know what the difference is between a custodial A and custodial C?

*A.* Yes, I do.

*Q.* What is the difference?

*A.* No heavy lifting for custodial A, they normally don't throw out their own trash, no ladder climbing, no running of any dangerous machinery.

*Q.* What would the heavy lifting be, what type of heavy lifting would there be?

*A.* Moving of heavy desks, furniture, filing cabinets, supplies.

*Q.* Why would you have to get on a ladder, what would that entail?

*A.* Changing a light bulb.

\*     \*     \*

*Q.* What were your duties at Woodworth when you arrived there in '94?

*A.* I did the whole first floor hall, I did every entrance in and out of the building, large gym, two gang bathroom [sic], three classrooms, boys lockeroom [sic] and some other duties I can't remember.

\*     '\*     \*

*Q.* At Woodworth, would your duties change in the summer months?

*A.* Yes, it would.

*Q.* What would you do during the summer?

*A.* 'Stripping, wax floors, moving the furniture, cleaning them, change the light bulbs, dusting, major cleaning.

*Q.* Basically the same thing you would do at McDonald?

*A.* Yes.

*Q.* And since you got at—went to Woodworth, is there any change in your duties as of today?

*A.* I have a different area.

*Q.* Okay. What would be different about your area, just a different portion of building?

*A.* Correct.

*Q.* The same functions.

*A.* Same functions.

In 1995, plaintiff became pregnant with her second child. Because of her pregnancy, on March 22, 1995, plaintiff's personal physician restricted her employment activities to no lifting of more than fifteen to twenty pounds, no ladder climbing, and no use of an industrial buffer. Shortly after plaintiff presented defendant with her written work restrictions, defen-

dant's supervisor of human resources wrote a letter to plaintiff that stated:

> Dear Ms. Cunningham:
>
> As I told you on Monday, March 27, 1995, you cannot currently perform your Custodial C duties due to the restrictions your doctor has placed you under because of your pregnancy.
>
> Since you have exhausted all your sick, personal business, and vacation banks, you must apply for leave under the Family and Medical Leave Act. Please complete the appropriate forms as soon as possible and return them to the Department of Human Resources.

Thereafter, defendant placed plaintiff on extended health leave that was later converted to family medical leave. After the birth of her child, plaintiff returned to work as a Custodian C on November 30, 1995.

It is undisputed that defendant had a collective bargaining agreement with the Dearborn Federation of School Employees, of which plaintiff, as a full-time custodian, was a member. Pursuant to an agreement between defendant and the union, defendant had a "favored work" program. Under the agreement, and by policy of defendant, "an employee who was either eligible for or is receiving Worker's Compensation benefits is eligible for inclusion in the Favored Work Program," under which that employee will be permitted to work within the parameters of the medical restrictions placed on the employee. It is uncontested that because plaintiff was not eligible for worker's compensation for her pregnancy, she was not offered favored work.

Plaintiff subsequently filed a complaint in the circuit court, alleging that defendant's decision to sus-

pend plaintiff's employment as a Custodian C because of her medical restrictions constituted sex discrimination in violation of Michigan's Civil Rights Act, MCL 37.2101 *et seq.* In her claim based on "disparate treatment,"[1] plaintiff maintained she was treated differently than alleged similarly situated individuals because defendant permits favored work for job-related disabilities when an employee is eligible for or is receiving worker's compensation benefits, while defendant does *not* afford favored work for non-job-related disabilities such as pregnancy.

Following discovery,[2] defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff was unable to establish a prima facie case of sex discrimination based on her pregnancy because she could present no evidence that she was treated differently than any other employees with non-work-related conditions. Specifically, defendant contended that its decision not to allow plaintiff to continue working in a favored work capacity was

---

[1] Michigan courts and federal courts have recognized two broad categories of claims for sexual discrimination: "disparate treatment" and "disparate impact" claims. See, generally, *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). In *McDonnell Douglas Corp v Green*, 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973), the United States Supreme Court provided a framework for analyzing discrimination claims under title VII, which is also applied to claims arising under the Michigan Civil Rights Act and which is specifically adapted to the specific type of discrimination claim presented. See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 173, n 19; 579 NW2d 906 (1998); *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997); *Wilcoxon, supra* at 359. Under that test, a plaintiff may establish by direct or circumstantial evidence a prima facie case of prohibited discrimination by demonstrating that the plaintiff suffered an adverse employment action under the circumstances giving rise to an inference of discrimination. See, generally, *Wilcoxon, supra* at 359-361.

[2] Plaintiff presented evidence that three other custodians who were injured on the job and had similar medical restrictions placed on them were allowed to perform favored work.

based on defendant's district-wide policy, contained in the collective bargaining agreement with plaintiff's union and uniformly applied to men and women, that an employee is not given favored work unless that employee is eligible for worker's compensation by virtue of a work-related injury, which plaintiff concededly did not have. The trial court ultimately agreed with defendant's arguments and granted summary disposition in its favor. Plaintiff now appeals.

II

In her brief on appeal, plaintiff concedes "there are no Michigan cases on point" but relies on conflicting federal authorities to argue that illegal sex discrimination based on pregnancy occurs if a defendant/employer does not treat pregnancy as a job-related disability eligible for favored work. However, we agree with the circuit court and hold that defendant's differing treatment for job-related disabilities and non-job-related disabilities including pregnancy does not violate the Michigan Civil Rights Act. Because plaintiff's cause of action is not based on title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* as amended in 1978 by the Pregnancy Discrimination Act (PDA), we express no opinion regarding the dissimilar federal statute and its conflicting interpretations.

The Michigan Civil Rights Act provides:

> An employer shall not do any of the following:
> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . . [MCL 37.2202(1)(a).]

In response to the United States Supreme Court's decision in *General Electric Co v Gilbert*, 429 US 125; 97 S Ct 401; 50 L Ed 2d 343 (1976), the Michigan Legislature amended the Civil Rights Act and the United States Congress amended title VII of the Civil Rights Act of 1964. Both the Michigan Legislature and the Congress reacted to remedy the Supreme Court's decision, which held that title VII of the Civil Rights Act did not prohibit discrimination based on pregnancy. See, generally, *Koester v City of Novi*, 458 Mich 1, 10-12; 580 NW2d 835 (1998). However, the substance of the state and federal amendments were different. Michigan's amendment was a straightforward redefinition of the term "sex discrimination," which was clarified to include pregnancy and pregnancy-related conditions:

> "Sex" includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth that does not include nontherapeutic abortion not intended to save the life of the mother. [MCL 37.2201(d) (1978 PA 153, effective May 22, 1978).][3]

By contrast, the 1978 congressional amendment of title VII of the Civil Rights Act was more than a clarification. Unlike the 1978 amendment of the Michigan Civil Rights Act, the federal amendment, the PDA, not only stated that sex discrimination included discrimination based on pregnancy and pregnancy-related conditions but further provided "*women affected by pregnancy, . . . shall be treated the same for all employment-related purposes, . . . as other persons*

---

[3] In *Koester, supra* at 16, our Supreme Court held that under the express language of the Michigan statute, "sexual discrimination includes harassment on the basis of a woman's pregnancy."

*not so affected but similar in their ability or inability to work.*" 42 USC 2000e(k) (emphasis added).

The United States Sixth Circuit Court of Appeals in *Ensley-Gaines v Runyon*, 100 F3d 1220, 1226 (CA 6, 1996), on which plaintiff herein relies, held that the PDA not only overturned the Supreme Court's decision in *Gilbert, supra,* by outlawing discrimination based on pregnancy but also *"provided additional protection to those women affected by pregnancy."* According to the *Ensley-Gaines* court, the additional protection afforded by the PDA is the second clause of the PDA, which "mandates that pregnant employees 'shall be treated the same for all employment-related purposes' as nonpregnant employees *similarly situated with respect to their ability to work.*" *Id.* (Emphasis in original.) On the basis of this language contained in the PDA, the *Ensley-Gaines* court held that pregnant employees may not be treated differently on the basis of whether their disability is work-related or non-work-related:

> [T]he PDA explicitly alters the analysis to be applied in pregnancy discrimination cases. While Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated "in all respects," *Mitchell* [*v Toledo Hosp*], 964 F2d [577 (CA 6, 1992)] at 583, the PDA requires only that the employee be similar in his or her "ability or inability to work." 42 USC 2000e(k).
>
> Accordingly, when a Title VII litigant alleges discrimination on the basis of pregnancy in violation of the PDA, in order to establish a prima facie case of discrimination, she must demonstrate only that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits. In addition, of course, she still must meet her burden of demonstrating that she is a member of the class to be protected by the PDA, that she

was denied benefits, and that she was qualified to receive those benefits. See *McDonnell Douglas [Corp v Green]*, 411 US [792] at 802, 93 S Ct [1817] at 1824 [36 L Ed 2d 668 (1973)]. Likewise, this ruling does not alter the plaintiff's burden in rebutting any legitimate, nondiscriminatory reasons which may be offered by the defendant for its employment actions. Therefore, under the PDA, an individual employee alleging discrimination based upon pregnancy need not meet "the same supervisor test" as enunciated in *Mitchell*, but need only demonstrate that another employee who was similar in her or his ability or inability to work received the employment benefits denied to her. [*Ensley-Gaines, supra* at 1226.]

The Sixth Circuit Court of Appeals opinion in *Ensley-Gaines, supra,* was followed recently by the federal district court for the eastern district of Michigan in *Sumner v Wayne Co*, 94 F Supp 2d 822, 826 (2000). In applying the second clause protections of the PDA, Judge Cohn held:

Contrary to defendants' arguments, the distinction that Seely's [another employee] temporary disability was as a result of an injury sustained on the job, while Sumner's [plaintiff] was as a result of her pregnancy (presumably sustained while she was off-duty), is not material. The proper focus under the comparison prong is whether the employees are similar in their ability or inability to work, regardless of the source of the injury or illness.

Accordingly, relying on the precise language of the second clause of the PDA, the Sixth Circuit Court of Appeals and the federal district court for the eastern district of Michigan have held that in regard to pregnant employees, employers may not make a distinction between work-related disabilities and non-work-related disabilities.

However, in *Urbano v Continental Airlines, Inc*, 138 F3d 204, 206 (CA 5, 1998), the Fifth Circuit Court of Appeals rejected the holding of *Ensley-Gaines*, *supra*, when it held that it was not a violation of the PDA for the employer to deny light duty assignments to pregnant employees even though employees who were injured on the job were provided with such an opportunity. The *Urbano* court held that the PDA merely reestablished the principles of title VII law as they had been understood before the *Gilbert* decision and included pregnancy and pregnancy-related conditions within the definition of sex discrimination without affording pregnant workers any greater rights. *Id.* at 207. In a footnote, the *Urbano* court opined that if the PDA were construed in the manner advanced by *Ensley-Gaines*, the act would discriminate against male employees and therefore violate the intent of title VII, which is to prohibit any discrimination based on sex. *Id.* at 208, n 2.

Likewise, in *Spivey v Beverly Enterprises, Inc*, 196 F3d 1309 (CA 11, 1999), the Eleventh Circuit Court of Appeals, favorably acknowledging *Urbano*, *supra*, held that the defendant employer did not violate the PDA by offering modified duty solely to employees injured on the job, and not to employees with non-occupational injuries, including pregnant employees such as the plaintiff. The *Spivey* court explained, *supra* at 1313:

> The correct comparison is between Appellant and other employees who suffer non-occupational disabilities, not between Appellant and employees who are injured on the job. Under the PDA, the employer must ignore an employee's pregnancy and treat her "as well as it would have if she were not pregnant." *Piraino v International Orientation*

*Resources, Inc*, 84 F3d 270, 274 (7th Cir 1996). Ignoring Appellant's pregnancy would still have left Appellee with an employee who suffered from a non-occupational injury. Appellee, as per its policy, was therefore entitled to deny Appellant a modified duty assignment as long as it denied modified duty assignments to all employees who were not injured on the job.

*     *     *

We therefore hold that an employer does not violate the PDA when it offers modified duty solely to employees who are injured on the job and not to employees who suffer from a non-occupational injury. Of course, pregnant employees must be treated the same as every other employee with a non-occupational injury.

Cf. *Spaziano v Lucky Stores, Inc*, 69 Cal App 4th 106; 81 Cal Rptr 2d 378 (1999).

In the present case, plaintiff's claim of unlawful sex discrimination is based solely on the Michigan Civil Rights Act, not title VII. Most importantly, our Civil Rights Act does not contain the critical language of the PDA that was found dispositive in *Ensley-Gaines, supra*, and *Sumner, supra*. Michigan's 1978 amendment is narrower in scope than the federal PDA. Thus, as previously noted, the above conflicting interpretations of the dissimilar federal statute are inapposite and not dispositive of the case at hand.

Recently in *Chambers v Trettco, Inc*, 463 Mich 297; 614 NW2d 910 (2000), our Supreme Court emphasized that our Civil Rights Act does not always follow its parallel federal counterpart. In this regard, the Michigan Supreme Court stated:

We are many times guided in our interpretation of the Michigan Civil Rights Act by federal court interpretations of its counterpart federal statute. See, e.g., *Sumner v Good-*

*year Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986). However, we have generally been careful to make it clear that we are not compelled to follow those federal interpretations. See, e.g., *Radtke [v Everett,* 442 Mich 368, 382; 501 NW2d 155 (1993)]. Instead, our primary obligation when interpreting Michigan law is always "to ascertain and give effect to the intent of the Legislature, . . . 'as gathered from the act itself.' " *McJunkin v Cellasto Plastic Corp,* 461 Mich 590, 598; 608 NW2d 57 (2000). Although there will often be good reasons to look for guidance in federal interpretations of similar laws, particularly where the Legislature has acted to conform Michigan law with the decisions of the federal judiciary, see, e.g., *Koester v City of Novi,* 458 Mich 1, 15-16; 580 NW2d 835 (1998), we cannot defer to federal interpretations if doing so would nullify a portion of the Legislature's enactment. [*Id.* at 313.]

Because the language of our Civil Rights Act differs from its federal counterpart, we rely on other state jurisdictions for guidance. In this regard, we note that in *Lavalley v E B & A C Whiting Co,* 166 Vt 205; 692 A2d 367 (1997), the Vermont Supreme Court addressed the present issue under their substantially similar civil rights statute. In holding that differing treatment between work-related disabilities and non-work-related disabilities, including pregnancy, was not illegal sex discrimination, the Vermont Supreme Court held:

There was no allegation below that the employer treated non-pregnant employees with nonwork-related injuries more favorably by providing them with job accommodation . . . . On the contrary, she appears to have been accorded exactly the same rights as were available to all other employees, whether male or female. Nor was there any allegation that defendant departed from its policy in a discriminatory manner, or that the employer implemented the policy to intentionally discriminate against pregnant women. [*Id.* at 212.]

In so holding, the *Lavalley* court surveyed the law of other jurisdictions:

Unlike the employment policy in [*General Electric Co v*] *Gilbert* [429 US 125; 97 S Ct 401; 50 L Ed 2d 343 (1976)] and virtually all of the pregnancy discrimination cases, the policy [of treating pregnancy similarly to all other non-work-related disabilities] does not specifically condition any employment or benefit rule on pregnancy. Indeed, the policy is facially neutral and affects pregnant women because their temporary disability, and those of others both male and female, is not work related. See *Adams* [*v Nolan*, 962 F2d 791 (CA 8, 1992)] at 794-95 (policy that determines availability of light-duty assignments to those with "nonwork related injury or illness" is not discriminatory if applicable to all such persons without intent to discriminate against pregnant workers); *Ulloa v American Express Travel Related Servs Co*, 822 F Supp 1566, 1571 (SD Fla, 1993) (no disparate treatment where pregnant employee who was terminated for taking leave of absence exceeding twelve weeks failed to show she was treated less favorably than nonpregnant employees who took leave of absence exceeding twelve weeks); *Atwood v City of Des Moines*, 485 NW2d 657, 660 (Iowa, 1992) (police department's change in light-duty policy was not pregnancy discrimination where new policies accorded pregnant police officer same rights as were available prospectively to all other employees); see generally *Wimberly v Labor & Indus Relations Comm'n*, 479 US 511, 517; 107 S Ct 821, 825; 93 L Ed 2d 909 (1987) (state unemployment compensation rule that denies benefits to those who leave jobs for nonwork-related reasons is facially neutral and does not discriminate against pregnant worker). [*Lavalley, supra* at 212-213.]

Applying these principles to the present case, we hold that defendant's classification and decision to afford favored work only for job-related disabilities eligible for worker's compensation benefits does not constitute sex discrimination in violation of the Michi-

gan Civil Rights Act. Plaintiff, who sustained a non-work-related temporary disability because of her pregnancy, was not similarly situated with defendant's other employees who sustained work-related disabilities and were eligible for worker's compensation benefits. See, generally, *Schultes v Naylor*, 195 Mich App 640, 645; 491 NW2d 240 (1992). Cf. *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). Under the circumstances, plaintiff has failed to meet her burden of establishing a prima facie case of discrimination based on pregnancy under the Michigan Civil Rights Act, and therefore, the trial court did not err in granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 119-121; 597 NW2d 817 (1999).

III

As her second argument, plaintiff asserts that despite the job restrictions imposed by her physician, she was physically capable of performing the duties of a Custodian C. In her affidavit, plaintiff claims that her medical restrictions did not affect her ability to work because she only occasionally had to climb ladders and that other Custodian C employees would normally operate the buffers and perform heavy lifting in excess of twenty pounds. We reject plaintiff's argument for two reasons. First, we will not permit plaintiff to create a genuine issue of material fact by submitting an affidavit that contradicts her sworn deposition testimony. *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 202; 536 NW2d 784 (1995); *Peterfish v Frantz*, 168 Mich App 43, 54-55; 424 NW2d 25 (1988). Second, the duties of the Custodian C posi-

tion are set forth in defendant's job description. Whether plaintiff must necessarily perform all such tasks on a day-to-day basis is irrelevant because plaintiff must have the physical ability to perform such responsibilities if required. In light of plaintiff's job restrictions imposed by her own physician, we conclude that it would have been unreasonable for defendant to allow plaintiff to continue working while attempting to perform tasks that may have been harmful to her. For these reasons, we conclude that the lower court correctly granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10).

Affirmed.