VENABLE v GENERAL MOTORS CORPORATION (ON REMAND)

Docket No. 219037. Submitted August 1, 2002, at Detroit. Decided October 22, 2002, at 9:05 A.M.

Phillip I. Venable, a sixty-one-year-old male Caucasian, brought an action in the Genesee Circuit Court against General Motors Corporation, alleging that the defendant's termination of his employment as a supervisor constituted unlawful employment discrimination based on race, gender, and age under the Civil Rights Act, MCL 37.2101 *et seq.* The court, Judith A. Fullerton, J., granted summary disposition for the defendant, ruling that there were no genuine issues of material fact and the defendant was entitled to judgment as a matter of law because the plaintiff was dismissed for regularly joining his subordinate employees in leaving work early and going to a nearby bar after the plaintiff and fellow supervisors had been warned by the defendant that they would be immediately discharged if they knowingly allowed an employee to leave work while on company time. The Court of Appeals, O'CONNELL, P.J., and FITZGERALD and WILDER, JJ., in an unpublished opinion issued April 20, 2001, and citing *Allen v Comprehensive Health Services,* 222 Mich App 426 (1997), affirmed the trial court's decision. The Supreme Court considered the plaintiff's application for leave to appeal and entered an unpublished order on July 31, 2002, remanding the case to the Court of Appeals for an explanation whether it was necessary to rely on *Allen* in affirming summary disposition for the defendant and, if it was necessary, whether the "background circumstances" test imposed by *Allen* in evaluating "reverse discrimination" claims is consistent with the Civil Rights Act and, if so, whether it is consistent with state or federal equal protection principles.

On remand, the Court of Appeals *held:*

1. The framework established by *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), is used in deciding employment discrimination claims under the Civil Rights Act. That framework requires a showing that the plaintiff was a member of a protected class, was subject to an adverse employment action, and was qualified for the position and that others, similarly situated and outside the protected class, were unaffected

by the employer's adverse action. *Allen* was wrongly decided in
that it added an element to the *McDonnell Douglas* framework in
reverse employment discrimination cases by holding that a reverse
discrimination plaintiff can rely on the *McDonnell Douglas* frame-
work to establish a prima facie case of intentionally disparate treat-
ment only when background circumstances support the suspicion
that the defendant is that unusual employer who discriminates
against the majority.

2. Reliance on *Allen* was not necessary to affirm the trial court's
grant of summary disposition for the defendant. Under the *McDon-
nell Douglas* framework untainted by *Allen,* the plaintiff cannot
survive summary disposition because he cannot make out a prima
facie case and, even if he could, the reason stated by the defendant
for the defendant's discharge was legitimate and was not a pretext
for discrimination.

Affirmed.

WILDER, J., concurring, stated that reliance on *Allen* was not
required to affirm the trial court's decision in this panel's prior
opinion. The plaintiff failed to show that he was situated similarly
to other supervisors of different gender or race who were not
discharged.

*Law Office of Gregory T. Gibbs* (by *Jeanmarie
Miller*) for the plaintiff.

*Hardy, Lewis & Page, P.C.* (by *Terence V. Page* and
*Kay Rivest Butler*) (*Keller Thoma, P.C.*, by *Kimberly
A. Sordyl* and *Lincoln G. Herweyer*, of counsel), for
the defendant.

ON REMAND

Before: O'CONNELL, P.J., and FITZGERALD and WILDER,
JJ.

O'CONNELL, P.J. This reverse employment discrimi-
nation case is before us on remand from our Supreme
Court. In an unusual remand order, the Court stated
in part:

> The panel is directed to explain . . . whether, in affirming
> summary disposition in favor of defendant, it was necessary
> to rely on *Allen v Comprehensive Health Services,* 222 Mich
> App 426; 564 NW2d 914 (1997). If it was not, the Court
> should explain why not. If it was, the Court should explain
> why it was and address whether the ["]background circum-
> stances["] test imposed by *Allen* in evaluating ["]reverse dis-
> crimination["] claims is consistent with the Civil Rights Act,
> MCL 37.2101 *et seq.* If so, it should also address whether
> the test is consistent with state or federal equal protection
> principles.[1] [*Venable v General Motors Corp,* 650 NW2d 339
> (2002) (Docket No. 119202).]

From this language we discern that our Supreme
Court has ordered us to (1) determine if this Court's
previous opinion in *Allen* was wrongly decided and
(2) determine if the *Allen* decision is outcome deter-
minative of the present case.[2] We conclude that *Allen*
was wrongly decided and that the *Allen* decision is
not outcome determinative of the present case.[3] Thus,

---

[1] We note that leave to appeal to our Supreme Court was granted in
*Allen,* 459 Mich 861 (1998), and the Court subsequently "direct[ed] the
parties to file . . . supplemental briefs on the question of the propriety of
applying the analysis of *McDonnell Douglas Corp v Green,* 411 US 792; 93
S Ct 1817; 36 L Ed 2d 668 (1973), in determining the existence of a prima
facie case in cases arising under the Elliott-Larsen Civil Rights Act." *Allen
v Comprehensive Health Services,* 590 NW2d 573 (1999). The case was
dismissed soon after by stipulation of the parties without resolution by
our Supreme Court.

[2] In essence, our Supreme Court has ordered us to act as an appellate
court over the previous opinion of our colleagues in *Allen.* We undertake
this task with due respect for the *Allen* panel's decision.

[3] While we conclude that *Allen* was wrongly decided, we note that one
panel of this Court may not overrule a decision of another panel. MCR
7.215(I)(1). In addition, we cannot declare a conflict and convene a con-
flict panel because, in our opinion, *Allen* is not outcome determinative of
the present case. See MCR 7.215(I)(2)-(3); *Booker v Detroit,* 251 Mich
App 167, 181, 185; 650 NW2d 680 (2002). Because our Supreme Court
retained jurisdiction of the present case on remand, we urge the Court to
grant leave in the present case and resolve the conflict created by this
case and the *Allen* decision. See *Mudel v Great Atlantic & Pacific Tea Co,*

we again affirm the trial court's order granting summary disposition for defendant.[4]

### I. THE *McDONNELL DOUGLAS* FRAMEWORK

In *McDonnell Douglas Corp v Green*, 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973), the United States Supreme Court established the elements of a prima facie case for claims alleging race discrimination in employment under title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [*McDonnell Douglas, supra* at 802.]

In *Town v Michigan Bell Telephone Co*, 455 Mich 688; 568 NW2d 64 (1997), our Supreme Court adapted the *McDonnell Douglas* framework to the Michigan Civil Rights Act. This was done to accommodate additional types of discrimination claims—including employment discrimination based on sex and age—and to accommodate other "adverse employment action[s]." *Id.* at 695 (BRICKLEY, J., with BOYLE and WEAVER, JJ., concurring). The framework, long used by courts of

---

462 Mich 691, 708; 614 NW2d 607 (2000) (wrongly decided cases produce more injury when followed than if overruled).

[4] Our previous opinion in this case was *Venable v General Motors Corp*, unpublished opinion per curiam of the Court of Appeals, issued April 20, 2001 (Docket No. 219037).

this state,[5] requires a showing that plaintiff was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Id.* at 695 (BRICKLEY, J., with BOYLE and WEAVER, JJ., concurring), 707 (RILEY, J., concurring in the judgment); see also *Lytle v Malady (On Rehearing)*, 458 Mich 153, 171-173, n 19 (WEAVER, J., with BOYLE and TAYLOR, JJ., concurring), 185 (BRICKLEY, J., concurring in the judgment); 579 NW2d 906 (1998).

## II. APPLICATION TO REVERSE DISCRIMINATION CASES

We believe *Allen* was wrongly decided because *Allen* improperly modified the *McDonnell Douglas* framework by adding an element for reverse employ-

---

[5] One of the first cases in which our Supreme Court adopted the *McDonnell Douglas* framework for "ordinary" employment discrimination cases was *Victorson v Dep't of Treasury*, 439 Mich 131, 142-143; 482 NW2d 685 (1992) (affirmative action plan claim brought by male employee); see also *Rasheed v Chrysler Corp*, 445 Mich 109, 132-133, n 41; 517 NW2d 19 (1994) (race and religious discrimination case); *Town, supra* at 694-696 (sex and age discrimination); *Lytle v Malady (On Rehearing)*, 458 Mich 153, 171-173, n 19 (WEAVER, J., with BOYLE and TAYLOR, JJ., concurring), 185 (BRICKLEY, J., concurring in the judgment); 579 NW2d 906 (1998) (sex and age discrimination); *Hazle v Ford Motor Co*, 464 Mich 456, 467-472; 628 NW2d 515 (2001) (race discrimination). *This* Court has applied the *McDonnell Douglas* framework in several published "ordinary" discrimination cases based on race or sex, including: *Harrison v Olde Financial Corp*, 225 Mich App 601, 606-607; 572 NW2d 679 (1997); *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 359; 597 NW2d 250 (1999); *Cunningham v Dearborn Bd of Ed*, 246 Mich App 621, 626, n 1; 633 NW2d 481 (2001).

ment discrimination cases.[6] Citing questionable federal precedent,[7] the *Allen* Court concluded that reverse discrimination plaintiffs can rely on the *McDonnell Douglas* framework to establish "a prima facie case of intentionally disparate treatment only 'when *background circumstances* support the suspicion that the defendant is that unusual employer who discriminates against the majority.' " *Allen*, 222 Mich App 432 (emphasis added), quoting *Parker v Baltimore & O R Co*, 209 US App DC 215, 220; 652 F2d 1012 (1981). This additional element has become known as the "background circumstances" test. The *Allen* Court reasoned as follows:

> Recognizing that "[t]he facts necessarily will vary in Title VII cases," the *McDonnell Douglas* Court noted that its specification of the prima facie burden of proof "is not necessarily applicable in every respect to differing factual situations." *Id.* at 802, n 13.

---

[6] It appears that no Michigan appellate court has applied the *McDonnell Douglas* framework in a published "reverse" discrimination decision except for *Allen*. Rather, our Supreme Court has decided several "reverse" discrimination cases, but never applied the *McDonnell Douglas* analysis to them. See, e.g., *Crawford v Dep't of Civil Service*, 466 Mich 250; 645 NW2d 6 (2002) (reverse race discrimination case under state and federal law).

[7] In particular, *Allen*, 222 Mich App 430-432, n 3, based its holding on nonbinding federal district and circuit court discrimination case law. District and circuit federal case law interpreting federal statutes similar to state statutes—as in the present case analogizing the Michigan Civil Rights Act to the federal Civil Rights Act—is merely persuasive authority. See *Sharp v City of Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001); *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000). Even so, decisions of the United States Supreme Court, such as *McDonnell Douglas*, are binding on this Court on the precise issues those decisions address and the precise statutes interpreted, particularly federal constitutional law. See *People v Beasley*, 239 Mich App 548, 558-559; 609 NW2d 581 (2000), citing *Texas v Brown*, 460 US 730, 737; 103 S Ct 1535; 75 L Ed 2d 502 (1983). Thus, the *McDonnell Douglas* case, addressing the federal Civil Rights Act, is merely persuasive, although widely adopted, authority in this state. See also *Allen*, 590 NW2d 573.

The District of Columbia Circuit Court of Appeals accepted this invitation to modify the *McDonnell Douglas* test for purposes of a "reverse discrimination" claim in *Parker*[,] [*supra*] . . . .

\*     \*     \*

. . . The *Parker* court held that majority plaintiffs [i.e., Caucasian or male plaintiffs] can rely on the *McDonnell Douglas* criteria to prove a prima facie case of intentionally disparate treatment only "when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.*

The *Parker* analysis has been followed by appellate courts in at least three other federal circuits. With these courts, we conclude that *Parker* appropriately modified the *McDonnell Douglas* test for application to a reverse discrimination claim brought under title VII. Further, recognizing that these precedents are not binding upon us in interpreting Michigan's Civil Rights Act, we nonetheless are convinced by the *Parker* analysis and adopt its approach for purposes of this statute as well.

Accordingly, we hold that *a reverse discrimination plaintiff* who has no direct evidence of discriminatory intent may establish a prima facie claim of gender [sex] discrimination under the Civil Rights Act with respect to a promotion decision by showing *(i) background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against men;* (ii) that the plaintiff applied and was qualified for an available promotion; (iii) that, despite plaintiff's qualifications, he was not promoted; and (iv) that a female employee of similar qualifications was promoted.[8] Upon this showing, a "presumption" of discriminatory intent is established for possible rebuttal by the employer. Absent this showing, a reverse discrimination plaintiff who has no direct evidence of dis-

---

[8] In *Allen*, 222 Mich App 429, the alleged "adverse employment action" was a failure to promote on the basis of sex. In the present case and in *Town*, *supra* at 692-694, the adverse employment actions were the plaintiffs' discharge.

criminatory intent cannot proceed. [*Allen, supra,* 222 Mich App 430-433 (citations omitted; emphasis added).]

### III. *ALLEN'S* MODIFICATION OF THE *McDONNELL DOUGLAS* FRAMEWORK

By adding the "background circumstances" test to the *McDonnell Douglas* framework, *Allen* made it more difficult procedurally for a Caucasian or male plaintiff-employee than for an African-American or female plaintiff-employee to allege employment discrimination. See *Pierce v Commonwealth Life Ins Co,* 40 F3d 796, 801, n 7 (CA 6, 1994). While the *McDonnell Douglas* decision allowed its framework to be adapted to different types of discrimination or different types of "adverse employment action[s]" (*Town, supra* at 695), *Allen* clearly departed from *McDonnell Douglas* and added an entire element to the framework.

In our opinion, the "background circumstances" test imposed by *Allen* in evaluating reverse employment discrimination claims is inconsistent with the Michigan Civil Rights Act. The Civil Rights Act does not make a distinction concerning whether an employee alleging race discrimination is Caucasian or African-American. It only provides that "[a]n employer shall not . . . discriminate against an individual with respect to employment . . . because of religion, race, color, national origin, age, [or] sex . . . ." MCL 37.2202(1)(a). That is, *any individual,* Caucasian or African-American, male or female, is protected from race or sex discrimination under the Civil Rights Act. Consequently, ordinary and reverse discrimination claims are equally sustainable under the Civil

Rights Act.[9] See *Pierce, supra.* Therefore, we hold that the *Allen* Court erred in adding the "background circumstances" test to a prima facie case for plaintiffs alleging reverse discrimination in employment.

IV. THE FACTS OF OUR PREVIOUS DECISION IN *VENABLE*

The facts of this case were set forth in our previous opinion:

> Plaintiff, a sixty-one-year-old Caucasian male, was discharged from his employment with defendant in 1996 after approximately thirty-one years of service. At the time of his discharge, plaintiff held the position of a sixth-level supervisor in defendant's Service Parts Organization (SPO) plant in Swartz Creek. In August 1996, defendant received a phone call from an anonymous individual on its "Awareline," a confidential toll-free number defendant's employees used to report suspected misconduct. The caller alleged that plaintiff had been observed leaving the SPO facility on company time with hourly employees and drinking at a nearby bar. Subsequent surveillance by defendant confirmed the caller's allegations, and plaintiff was discharged. Plaintiff's termination in October 1996 followed a meeting for all sixth-level supervisors held in the spring of 1996, where management personnel warned employees that they would be immediately discharged if they knowingly allowed an employee to leave the plant while on company time.
>
> After his employment with defendant was terminated, plaintiff commenced the instant action alleging race, gender, and age discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, wrongful discharge, and fraudulent misrepresentation. After defendant moved for summary disposition under MCR

---

[9] As we did in our previous opinion in this case, we again note, without deciding the unpreserved constitutional issue, that the "background circumstances" test in *Allen*'s prima facie case for reverse discrimination claims also may be violative of equal protection and due process. See also *Venable, supra,* unpublished order of the Michigan Supreme Court.

2.116(C)(10), the trial court summarily disposed of all of plaintiff's claims.[10] [*Venable v General Motors Corp*, unpublished opinion per curiam of the Court of Appeals, issued April 20, 2001 (Docket No. 219037).]

## V. ANALYSIS

Our previous opinion in this case cited *Allen*'s modification and application of the *McDonnell Douglas* framework. See *Allen, supra*, 222 Mich App 431-432, citing *McDonnell Douglas, supra*. Having determined that *Allen* was wrongly decided, our next task is to ascertain whether the result of our previous opinion in this case would have been the same without employing the *Allen* "background circumstances" test. In direct answer to our Supreme Court's first question on remand, we hold that it was not necessary to rely on *Allen* in our previous opinion because direct application of the adapted *McDonnell Douglas* framework produces the same result. Thus, because our application of *Allen* in our previous opinion was not outcome determinative, we need not declare a conflict in the present case. See MCR 7.215(I)(2)-(3); *Booker v Detroit*, 251 Mich App 167, 181, 185; 650 NW2d 680 (2002).

In our opinion, under *McDonnell Douglas*, the present plaintiff cannot survive summary disposition. See *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Therefore, the trial court in this case properly granted summary disposition to defendant pursuant to MCR 2.116(C)(10) for lack of a genuine issue of material fact.

---

[10] Plaintiff's age discrimination, wrongful discharge, and fraudulent misrepresentation claims are not relevant to our task on remand.

With regard to the first element in the *McDonnell Douglas* framework, according to Michigan's Civil Rights Act the instant plaintiff is a member of a protected class on the basis of his race and sex. See *Town, supra* at 695, 707; MCL 37.2202(1)(a) ("[a]n employer shall not . . . discriminate against an individual . . . because of . . . race, color, national origin, age, sex . . ."). Second, plaintiff was subjected to an adverse employment action, i.e., discharge. See *Town, supra.* Third, according to the evidence in this case, plaintiff was otherwise qualified for his position. *Id.* Fourth, and finally, plaintiff claims that similarly situated African-American and female employees were not discharged for the same conduct. *Id.*; *Lytle, supra* at 172-173, 185.

Even if plaintiff could make out a prima facie case under the above framework, we hold that he cannot survive the next steps in the analysis involving shifting the burden of production. After a plaintiff-employee sets out a *McDonnell Douglas* prima facie case, the burden of production shifts to the defendant-employer to produce a nondiscriminatory reason for the adverse employment decision. *Town, supra* at 695, citing *McDonnell, supra.* In the present case, defendant established (and plaintiff conceded) that plaintiff was discharged because he regularly joined his subordinate employees in leaving work early and proceeding to a nearby bar. Because this explanation satisfied defendant's burden at this stage of the analysis, the burden of production shifted back to plaintiff to prove by a preponderance of the evidence that this reason for discharge was a pretext for race or sex discrimination. *Town, supra* at 696-697, 707.

Plaintiff cannot meet this burden of production on the evidence presented on summary disposition. Indeed, the evidence shows that after defendant announced a policy prohibiting the alleged misconduct and warning of adverse employment consequences for those who defied the policy, plaintiff chose to leave work early with his subordinates. As we stated in our previous opinion, the similarly situated individuals plaintiff points to did not engage in such conduct *after* the policy was announced, as plaintiff did. Nor was their conduct as egregious as plaintiff's. Thus, plaintiff was not fired because of his race or sex, but for misconduct that similarly situated African-American and female employees did not commit. See *Town, supra; Lytle, supra.*

### VI. CONCLUSION

Therefore, on remand, as in our previous opinion, we again affirm the trial court's grant of summary disposition, albeit on different grounds. See *Town, supra; Lytle, supra.* Having decided that it was not necessary to rely on *Allen* in this case, but that the outcome is the same, we need not address the additional questions posed by our Supreme Court.

Affirmed.

FITZGERALD, J. I concur in the result only.

WILDER, J. *(concurring).* After review of the record and our prior opinion, I would conclude that in affirming summary disposition in favor of defendant, reliance on *Allen v Comprehensive Health Services,* 222 Mich App 426; 564 NW2d 914 (1997), was not required. In our prior opinion, we concluded that

plaintiff failed to demonstrate that he was situated similarly to the other sixth-level supervisors that plaintiff claimed were not discharged for similar conduct. Plaintiff's failure to show he was situated similarly to other employees who were younger or of a different gender or race, and whom plaintiff claims were treated differently than he was, prevents plaintiff from establishing a prima facie case of disparate treatment. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 181; 579 NW2d 906 (1998), citing *Betty v Brooks & Perkins*, 446 Mich 270, 281; 521 NW2d 518 (1994).

Accordingly, because plaintiff is unable to establish a prima facie case of age, race, or gender discrimination under a disparate treatment theory, I conclude that while we appropriately affirmed summary disposition in favor of defendant, it was not necessary for this Court to address the application of *Allen* to the facts in this case. *People v Graves*, 458 Mich 476, 479-480, n 2; 581 NW2d 229 (1998).