*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SALLY S. WHITE,

      Plaintiff-Appellant,

v

OAKLAND COMMUNITY COLLEGE,

      Defendant-Appellee.

UNPUBLISHED
November 10, 2022

No. 359712
Oakland Circuit Court
LC No. 2021-188604-CD

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant, Oakland Community College, summary disposition of her claim of reverse racial discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* (ELCRA), which arose because defendant hired an African-American candidate for a paraprofessional position at one of its campuses.[1]  Finding no error in the trial court's decision, we affirm.

## I. FACTUAL BACKGROUND

Plaintiff worked part time as an Academic Support Center paraprofessional (parapro) of defendant, a community college in Oakland County, at defendant's Southfield campus.  During June 2018, defendant posted a notice soliciting applications for a full-time parapro position at its Orchard Ridge campus in Farmington Hills.  A collective-bargaining agreement, the 2017-2020 AFSCME Local 2042 Classified Master Agreement, governed the terms and conditions of employment for certain employees including parapros and specified how bargaining unit vacancies would be filled by internal applicants who met the posted minimum qualifications.  Article 2B of the agreement prohibited among other things racial discrimination.  Article 20 provided for filling

---

[1] We note that the first candidate selected for the position plaintiff sought was, like plaintiff, Caucasian; but that person, after starting the position, pursuant to the collective-bargaining agreement, chose to revert to her old position.  After that took place, a new hiring process was undertaken and on that second occasion, an African-American was hired.

vacant bargaining unit positions from internal applicants who met the minimum qualifications as posted on defendant's intranet and required that defendant interview and choose from among the six most senior qualified applicants for the position. Appendix F covered minimum qualifications and, among other things, provided:

> 6. New applicants for any positions that become available must successfully complete the Clerical Skills Battery, which includes 1) Language Arts with 70% accuracy; 2) Mathematics with 70% accuracy; and 3) Microsoft Office Applications (as defined per job classification) with 70% accuracy; 4) Typing with 80% accuracy, if applicable to the position. Internal transfers are exempt from required work experience.

Article 20 required that defendant select the best qualified applicant "based on factors including job related training, education, experience and skills, as well as attendance and prior disciplinary action." Although seniority was not a determinative factor in defendant's hiring decision, Article 20 provided the most senior applicant who did not get selected a right to receive a written explanation for a hiring decision, and if unsatisfied with the explanation, the right to file a grievance at the fourth step of the grievance procedure.

Plaintiff applied for the parapro position because it offered full-time employment and other things she desired. Defendant's human resources department (HR) defined the parapro position's selection criteria as follows: customer service orientation; education (through HR screening process); soft skills-organizational/multitasking skills, following directions, team player, ability to work effectively in a diverse workplace; experience with relevant software and applications; time management skills; communication skills; knowledge of OCC processing. In relation to those criteria, defendant's HR department and members of the search committee prepared 14 interview questions for the four-member search committee's use in candidate interviews. The search committee interviewed internal candidates and recommended that defendant hire the candidate it deemed best for the position. Defendant hired an employee who worked at its Royal Oak campus as a Student Services Specialist. Plaintiff is Caucasian and the candidate selected by defendant for the parapro position is African-American.[2]

Unsatisfied with defendant's hiring decision, plaintiff filed a two-count discrimination complaint in federal court but the court declined to exercise jurisdiction over her ELCRA claim and dismissed it without prejudice. Plaintiff's federal discrimination lawsuit remained pending for well over a year during which the parties conducted extensive discovery.[3] The dismissal of her state-law claim prompted plaintiff to file the instant lawsuit alleging that defendant violated ELCRA by discriminating against her in its hiring decision on the basis of her race. Defendant answered the complaint and a day later filed a motion for summary disposition under MCR 2.116(C)(10) on the ground that race was not a factor in the hiring for the parapro position at the

---

[2] Later, in August 2018, plaintiff applied for and received another full-time parapro position at defendant's Highland Lakes campus effective October 2018.

[3] The federal court granted defendant's motion for summary judgment on plaintiff's claim alleging violation of Title VII of the 1964 Civil Rights Act.

Orchard Ridge campus in the Academic Support Center. Defendant argued that plaintiff failed to prove a prima facie case of discrimination and could not rebut its legitimate nondiscriminatory reason for its hiring decision. Plaintiff opposed the motion but the trial court agreed with defendant that no genuine issue of material fact existed and that defendant was entitled to judgment as a matter of law. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). The moving party bears the burden of establishing with admissible evidence its entitlement to judgment as a matter of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

## III. ANALYSIS

ELCRA prohibits employment discrimination on the basis of religion, race, color, national origin, age, sex, height, weight, or marital status. MCL 37.2202(1)(a); *Wilcoxon v 3M*, 235 Mich App 347, 358; 597 NW2d 250 (1999). In *Venable v Gen Motors Corp*, 253 Mich App 473, 476-477; 656 NW2d 188 (2002) (citations omitted), this Court discussed the framework used to evaluate employment discrimination claims. Referencing *McDonnell Douglas Corp v Green*, 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973) as authority, this Court stated:

> [O]ur Supreme Court adapted the *McDonnell Douglas* framework to the Michigan Civil Rights Act. This was done to accommodate additional types of discrimination claims-including employment discrimination based on sex and age-and to accommodate other "adverse employment action[s]." The framework, long used by courts of this state, requires a showing that plaintiff was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." [*Venable*, 253 Mich App at 476-477 (citations omitted).]

In *Venable*, this Court clarified that "*any individual*, Caucasian or African-American, male or female, is protected from race or sex discrimination under the Civil Rights Act. Consequently, ordinary and reverse discrimination claims are equally sustainable under the Civil Rights Act." *Id*. at 480-481.

To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) defendant's hiring decision occurred under circumstances giving rise to an inference of unlawful discrimination. *Sniecinski v BCBSM*, 469 Mich 124, 134; 666 NW2d 186 (2003). If the plaintiff successfully establishes her prima facie case, the burden shifts to the defendant to establish legitimate nondiscriminatory reasons for its hiring decision, and if the defendant achieves that, the burden shifts back to the plaintiff to prove that the proffered reason was merely pretextual. *Id*.

A plaintiff may establish a claim that her employer discriminated against her in violation of ELCRA by the presentation of direct or indirect evidence. *Wilcoxon*, 235 Mich App at 358-359. To establish a prima facie claim of employment discrimination, a plaintiff must show that she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Id*. at 361. "Circumstances give rise to an inference of discrimination when the plaintiff was treated differently than persons of a different class for the same or similar conduct." *Id*. (quotation marks and citation omitted). If a prima facie claim is established, the employer then bears the burden of showing a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer does so, the burden shifts back to the plaintiff to prove that the stated reason was merely pretextual. *Id*.

Plaintiff argues that she proved her prima facie case. Defendant argues that she did not. Plaintiff conceded that she has no direct evidence of racial discrimination but contends that she established a pretextual *McDonnell Douglas* type prima facie case of racial discrimination in that she suffered an adverse employment action by not being hired for the parapro position despite being qualified, that the candidate hired by defendant had inferior skills and experience, and that the circumstances give rise to an inference of unlawful discrimination. The parties do not dispute that plaintiff is a member of a protected class under ELCRA, that defendant did not select plaintiff for the parapro position, or that plaintiff qualified for the parapro position. The parties dispute whether race served as a motivating factor in defendant's hiring decision. Defendant contends that no indirect evidence supports plaintiff's claim and an inference of unlawful discrimination cannot be drawn in this case. We agree.

The record reflects that both plaintiff and the hired candidate met the minimum qualifications for the parapro position. Each had earned a bachelor's degree and each passed the clerical tests as required by the collective-bargaining agreement, satisfying the minimum qualifications. Although plaintiff and the hired candidate scored differently on the clerical skills tests, the differences were negligible and did not distinguish the candidates in any meaningful way. The record also indicates that each candidate had performed their respective jobs satisfactorily. Although plaintiff claimed to be superior, plaintiff failed to present evidence that the candidate defendant hired for the position lacked the skills, experience, and aptitude for the position. Further, plaintiff did not demonstrate with objective, verifiable evidence her claimed superiority.

Assuming that plaintiff established her prima facie case, the burden shifted to defendant to proffer a legitimate nondiscriminatory reason for its hiring decision. Defendant argued below and reiterates on appeal that it selected and hired the best candidate for the parapro position and that race had nothing to do with its hiring decision. Defendant asserted that the hired candidate had more seniority and was better qualified. As previously described, plaintiff and the selected

candidate each met the requisite minimum qualifications for the parapro position. Comparison of the two candidates reveals that plaintiff had more experience as a parapro, having served in that position part time for around six years. Nevertheless, the selected candidate had some experience as a parapro and numerous years of service for defendant in different positions providing her knowledge and experience in a number of areas of the college. Respecting the candidates' education, the selected candidate had a master's degree in business whereas plaintiff had only a bachelor's degree. Objective analysis of plaintiff and the selected candidate permits the conclusion that the candidates were relatively equal with the exception that the selected candidate had substantially more seniority and experience in higher education as an employee for defendant than plaintiff. Witnesses testified that seniority did not serve as a definitive factor but only a consideration in the overall hiring decision. The candidates being relatively equal in almost every respect, the record indicates that defendant made its hiring decision based on the candidates' respective interview performance and demonstration of their abilities in relation to the selection criteria.[4]

The record indicates that the search committee's candidate selection for recommendation to the HR department came down to the committee's analysis of the candidates' interview performance. All witnesses but plaintiff described the interview process as the decisive component of the selection process for the committee and that the selected candidate performed better than all other candidates.

Each member of the search committee testified that plaintiff's interview did not showcase her skill set. Further, the witnesses explained that they found it confusing that plaintiff waited until the last question of the interview to present the committee an album that she put together which featured photos of herself engaging in marketing activity related to a previous job and various correspondences from persons who praised plaintiff's job performance both in her position with defendant but also in several previous jobs with other employers dating back to 1986. The committee members' testimonies indicate that they felt confused as to plaintiff's rationale for sharing that information during the interview and did not understand how it correlated to the parapro position she sought or the selection criteria. In her deposition, plaintiff called the album her "brag book," and apparently assumed that the committee members would understand that it demonstrated her abilities. The record indicates that the item's presentation had the opposite effect with the committee. Examination of the album reveals that it did not specify in any manner how it should be interpreted or how it related to the selection criteria for the parapro position.

By contrast, the record reflects that the committee members were impressed with the selected candidate's interview because she demonstrated the scope of her skill set, presented herself as oriented to help students and place their needs first, wove into her responses to interview questions her experiences with students, showed how her knowledge and experience in the student enrollment position she held would add value to her role as an Academic Support Center parapro, and provided the most detailed and focused answers to the interview questions of all of the

---

[4] Plaintiff repeatedly offered her subjective personal assessment of herself as superior to the selected candidate, but she has not supported that contention with objective evidence that definitively demonstrates her superiority.

candidates. The committee members testified that the selected candidate distinguished herself in her interview responses as unquestionably the superior candidate who met the selection criteria. They all testified that the committee unanimously selected her to recommend to the HR department for hiring.

The record indicates that defendant presented admissible evidence that supported its position that the committee found the selected candidate the most recommendable candidate based on her interview performance. It also presented evidence that, although a qualified candidate for the parapro position, plaintiff fell short in her interview and the selected candidate demonstrated that she was the best choice for the position. The committee members each testified at their respective depositions that plaintiff did an adequate job in her interview but failed to clearly demonstrate her skills and link them to the selection criteria. Defendant's HR department ultimately hired the recommended candidate for the position. The record plainly establishes that defendant articulated a legitimate, nondiscriminatory reason for its hiring decision.

Having articulated a legitimate nondiscriminatory reason for defendant's hiring decision and supported it with admissible evidence, the burden shifted back to plaintiff to establish that the proffered reason merely served as a pretext and that plaintiff's race had been a motivating factor in defendant's hiring decision. As explained in *Hazle v Ford Motor Co*, 464 Mich 456, 466; 628 NW2d 515 (2001):

> The inquiry at this final stage of the *McDonnell Douglas* framework is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision. The only difference is that, for purposes of a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision. [Citation omitted.]

> \* \* \*

> [T]he *McDonnell Douglas* burden-shifting framework is merely intended "to progressively sharpen the inquiry into the elusive factual question of intentional discrimination." It is important to keep in mind, therefore, that for purposes of claims brought under the Michigan Civil Rights Act, the *McDonnell Douglas* approach merely provides a mechanism for assessing motions for summary disposition and directed verdict in cases involving circumstantial evidence of discrimination. It is useful only for purposes of assisting trial courts in determining whether there is a jury-submissible issue on the ultimate fact question of unlawful discrimination. [Citation omitted.]

"As a matter of law, an inference of unlawful discrimination does not arise merely because an employer has chosen between two qualified candidates." *Id*. at 471.

The record in this case establishes that plaintiff failed to meet her burden. Plaintiff attempted to establish her superiority to the selected candidate by pointing to her years of

experience as a parapro, by claiming her superiority, and by asserting that she felt that her interview went very well. Plaintiff's self-assessment, however, is not supported by the record. Further, plaintiff relied on conclusory speculation that, given her self-assessment of obvious superiority, defendant must have chosen the other candidate over her because of plaintiff's race. As previously explained, the two candidates met the minimum requirements for the position and were relatively equal candidates. Their respective interview performances served as the determinative factor in the hiring process. The witnesses testified that the selected candidate simply outperformed plaintiff. The selected candidate articulated in her interview in a clear and concise way how her skill set would benefit the Academic Support Center. She impressed the committee with her communication and listening skills, and student focus. Plaintiff presented no evidence to establish that a reasonable inference could be drawn that race played any role in defendant's decision-making process. Further, plaintiff failed to present any evidence direct or circumstantial that discriminatory animus motivated defendant in any respect in its hiring decision. Other than her subjective claim that she was more qualified than the selected candidate, plaintiff has offered nothing to support her claim that defendant acted with racial animus.

Plaintiff casts aspersions on the committee and argues that the members colluded in their deposition testimonies because they testified that plaintiff performed poorly in her interview in comparison to the selected candidate. Plaintiff maintains that their testimonies cannot be true because she herself was always the best qualified candidate. The record simply does not support plaintiff's arguments. Plaintiff also argues that defendant's Dean of Learning Resources, who convened and led the search committee, with whom she met in July 2018, gave her untrue reasons for defendant's decision from which the trial court should have inferred that defendant discriminated against her. The record of that meeting, however, reveals that the dean attempted to assist plaintiff in understanding the hiring process, the selection criteria, and recognize her shortcomings, so that she could perform better the next time she applied for a position with defendant. Plaintiff, however, refused to accept that she needed help or that she had not performed as well as the selected candidate. The record of that meeting further reveals that plaintiff had already concluded in her own mind that she had been racially discriminated against. Analysis of that meeting and the explanation given by the dean for defendant's hiring decision, does not permit any reasonable inferences that defendant acted with racial animus.

Viewing the evidence in this case in the light most favorable to plaintiff and drawing any reasonable inferences in her favor, reasonable minds cannot differ as to whether racial discrimination served as a motivating factor in defendant's hiring decision. Plaintiff failed to establish with any evidence that defendant's reasons for its decision were pretextual. Accordingly, plaintiff has failed to demonstrate the existence of a genuine issue of material fact concerning whether defendant relied on any discriminatory animus in making its employment decision.

We conclude that plaintiff has failed to establish the existence of a triable issue for the jury concerning whether race served as a motivating factor in defendant's employment decision. Therefore, the trial court did not err in granting defendant summary disposition.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford