# STATE OF MICHIGAN

# COURT OF APPEALS

LOWELL PHILLIPS,

      Plaintiff-Appellant,

v

CITY OF FERNDALE, FERNDALE POLICE
DEPARTMENT, and TIMOTHY D. COLLINS,

      Defendants-Appellees.

UNPUBLISHED
June 29, 2017

No.  330689
Oakland Circuit Court
LC No.  2014-138202-CD

Before:  SAWYER, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition in favor of defendants, city of Ferndale, the Ferndale Police Department, and Timothy D. Collins, regarding his claims of religious and racial discrimination and retaliatory discharge brought under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*  We affirm, but remand this matter to the trial court solely for the purpose of finalizing a determination of plaintiff's entitlement to an award of attorney fees and costs for discovery violations by defendants.

Plaintiff was hired in August of 2005 by the city of Ferndale (hereinafter "the City") as a police officer.  His employment was terminated on January 7, 2011, by the removal of plaintiff from the seniority list for callback following the layoff of plaintiff and seven additional officers due to financial constraints.  Plaintiff contends that he was discriminated against by defendants because he is Jewish, alleging systematic harassment through derogatory comments and actions by his fellow officers, and the command and supervisory personnel of the City's police department.  Plaintiff asserts that his complaints regarding these behaviors were ignored or overlooked and that he was treated differently than his coworkers, incurring disciplinary action that others were not subjected to for the same or similar behaviors.  As such, plaintiff contends that his discharge is based on discriminatory animus and that defendants' assertions that plaintiff failed to follow police department policies and procedures to justify his termination are pretextual.  Plaintiff further alleges that the termination of his employment with the police department was in retaliation for the complaints brought by plaintiff regarding the acts of discrimination and harassment plaintiff experienced in his workplace (the Ferndale Police Department).  Defendants contend that plaintiff's termination primarily stemmed from an incident on June 24, 2010, when plaintiff was involved in the high speed pursuit, with other

officers and police vehicles, of a criminal suspect that culminated in the suspect's death in which he violated the department's high speed pursuit and use of lethal force policies.

## I. VIOLATIONS OF THE CRA

Plaintiff challenges the grant of summary disposition in favor of defendants regarding his claims of violation of the CRA. Specifically, plaintiff contends that he was subjected to discrimination and disparate disciplinary treatment in the workplace based on his Jewish heritage and religion, which culminated in the improper termination of his employment. Plaintiff further alleges that his discharge from the Ferndale Police Department was in retaliation for his complaints regarding the discriminatory behavior he endured in the workplace.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014).

> Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. . . . Although generally not required to do so, a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider. . . . If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine. [*Id.* (citation omitted).]

"In reviewing a motion under Subrule (C)(7), the circuit court 'must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor.'" *Id.* (citation omitted). The determination of whether a claim is barred by the applicable statute of limitations, in addition to issues pertaining to the "applicability of the limitations periods," is also reviewed de novo. *Id.*

> A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews . . . a motion [for summary disposition] under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. All factual allegations supporting the claim, and any reasonable inference or conclusions that can be drawn from the facts, are accepted as true. [*Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016) (citations omitted).]

Finally:

> When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. All reasonable inferences are to be construed in favor of the nonmoving party. Summary disposition is proper under MCR 2.116(C)(10) if the

documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. This Court is liberal in finding genuine issues of material fact. A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ. [*NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 226-227; 886 NW2d 772 (2015) (citations omitted).]

In accordance with MCL 37.2202(1):

An employer shall not . . . :

a) Fail or refuse to hire, or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). As explained in *Moon v Mich Reproductive & IVF Center, PC*, 294 Mich App 582, 593-594; 810 NW2d 919 (2011):

In a discrimination action based on disparate treatment, the plaintiff has the initial burden to establish the existence of illegal discrimination, either through direct or indirect evidence. [P]roof of discriminatory motive is required in order to establish a prima facie case of disparate treatment. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the decision-maker's actions. [Citations and quotation marks omitted.]

The anti-retaliation provision of the CRA precludes discrimination or retaliation "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). To establish a prima facie case of retaliation under the CRA, a litigant is required to demonstrate "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005) (citation omitted). "To establish causation [when bringing a retaliation claim under the CRA], the plaintiff must show that his participation in activity protected by the CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001).

The starting point in this analysis is to determine which, if any, of plaintiff's claims under the CRA are time-barred. The applicable statute of limitations is three-years for a claim brought under the CRA as found in MCL 600.5805(10), which states: "Except as otherwise provided in

this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property." The accrual of claims is governed by MCL 600.5827, which states: "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in [MCL 600.5829 to 600.5838], and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

For purposes of this litigation, the relevant dates are identified as follows:

. The current lawsuit was filed on January 7, 2014.

. Plaintiff's final day of work was June 24, 2010.

. Plaintiff's seniority rights were terminated on January 7, 2011.

It is undisputed that the adverse action, in this matter, was the termination of plaintiff's seniority rights on January 7, 2011. See also *Collins v Comerica Bank*, 468 Mich 628, 633; 664 NW2d 713 (2003) ("[A] claim for discriminatory discharge cannot arise until a claimant has been discharged."). Thus, for purposes of this case, plaintiff's claims asserting acts that accrued before January 7, 2011, are time-barred. As discussed in *Garg*, 472 Mich at 284 (footnotes omitted), "a person must file a claim under the Civil Rights Act within three years of the date his or her cause of action accrues, as required by § 5805(10). That is, 'three years' means three years. An employee is not permitted to bring a lawsuit for employment acts that accrue beyond this period, because the Legislature has determined that such claims should not be permitted." Thus, the trial court correctly found that plaintiff was unable to recover for any alleged injury premised on his claims of discrimination that occurred before January 7, 2011, leaving his actual termination of employment to be the only alleged adverse action falling within the applicable limitations period.

In direct evidence cases, a plaintiff must demonstrate that unlawful discrimination was at least a motivating factor in the employer's actions. *Sniecinski*, 469 Mich at 133 (citations omitted). To prove discrimination, a plaintiff must demonstrate that he or she was (1) a member of a protected class, (2) subject to an adverse employment action, such as demotion or discharge, (3) qualified for the position, but (4) terminated in a manner that gives rise to an inference of unlawful discrimination. *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 538 n 8; 620 NW2d 836 (2001). The parties do not dispute plaintiff's status as "a member of a protected class" or his subjection to "an adverse employment action." *Venable v Gen Motors Corp*, 253 Mich App 473, 477; 656 NW2d 188 (2002) (citations omitted).

The trial court correctly determined that plaintiff was unable to establish direct evidence of discrimination. Plaintiff was terminated while laid off from his employment due to financial constraints being experienced by the city of Ferndale, the legitimacy of which he does not challenge. Plaintiff's termination, through the revocation of his seniority rights to recall, occurred following an investigation of a police pursuit that resulted in the death of the suspect pursued. Although plaintiff's termination referenced a history of his misconduct necessitating disciplinary action or counseling, the primary basis for his discharge was identified as plaintiff's

violation of multiple policies and procedures of the Ferndale Police Department during the 2010 pursuit. There was no reference or implication pertaining to his religion or heritage in reference to the discharge. Contrary to plaintiff's rather convoluted arguments on appeal, his claims regarding discriminatory comments by Collins during plaintiff's tenure with the police department are more appropriately considered as indirect or circumstantial evidence of discrimination in conjunction with the burden-shifting analysis of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

Having failed to demonstrate a prima facie case of discrimination by direct evidence, the burden-shifting framework of *McDonnell Douglas* is applied to determine if plaintiff produced sufficient circumstantial evidence "to create a rebuttable presumption of discrimination." *Meagher v Wayne State Univ*, 222 Mich App 700, 711; 565 NW2d 401 (1997) citing *Dixon v W W Grainger, Inc.*, 168 Mich App 107, 115; 423 NW2d 580 (1987). Specifically, under *McDonnell Douglas*, a plaintiff is permitted "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (citation omitted). To establish a prima facie case under *McDonnell Douglas* an employee must "show that [he or she] as (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) other, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997), abrogated in part on other grounds by *Gross v FBL Fin Servs, Inc*, 557 US 167; 129 S Ct 2343; 174 L Ed 2d 119 (2009). Accordingly,

> [o]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case. The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. "Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away.
>
> At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." [A] plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." [*Hazle*, 464 Mich at 464-466 (citations omitted).]

In this instance, defendants assert that plaintiff's discharge was solely premised on his misconduct as demonstrated by the violation of policies and procedures pertaining to police pursuits and the use of lethal force by plaintiff during the incident of June 24, 2010, thereby articulating a legitimate, nondiscriminatory basis for their actions. Defendants pointed to numerous policy violations by plaintiff during the relevant pursuit involving caravanning, overtaking other vehicles engaged in the pursuit, striking the suspect's vehicle and failing to

-5-

assume a tactical position, which resulted in a more dangerous situation for all the officers involved and the death of the suspect. Defendants contended that the behaviors exhibited by plaintiff during this pursuit had, in part, been the subject of prior counseling or discipline with plaintiff, demonstrating his failure to benefit or learn from these errors. In support of their position, defendants were able to provide videotape recordings of the police pursuit from the perspective of the police officers involved, plaintiff's prior disciplinary records, and the results of the arbitration arising from plaintiff's grievances pertaining to the disciplinary measures taken following this pursuit, which upheld plaintiff's discharge as being justified based on plaintiff's multiple violations of defendants' policies and procedures during this incident.

"A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v Baxter Healthcare Corp*, 533 F3d 381, 393 (CA 6, 2008).[1] Plaintiff's proffered evidence of discriminatory animus to rebut as pretext defendants' articulated reason for his discharge falls within two general categories: (a) use of derogatory terms and incidents, such as the displays on plaintiff's computer files, referencing his Jewish heritage and religion and (b) his subjection to harsher discipline for alleged violations of defendants' policy and on-duty misconduct than other, similarly situated coworkers who were outside plaintiff's protected class.

Addressing plaintiff's assertions regarding the use of derogatory terms and displays regarding his Jewish faith and heritage, it is noted that various coworkers and supervisors acknowledged their occurrence, but disputed they were motivated by any form of discriminatory animus. Plaintiff admitted that except for two instances involving his response to earlier disciplinary actions in 2008 and 2009, he did not complain to a supervisor regarding the ongoing comments or behaviors, despite their perceived offensive nature. While plaintiff contends that Collins also used derogatory references with regard to plaintiff and presumes that Collins was the only individual with access to the computers to enable alterations to plaintiff's files, he provides no evidence to contradict or rebut testimony by Collins denying his alteration of plaintiff's computer screen or wallpaper and that upon learning the meaning of the term "AJ" to be "Angry Jew," Collins instructed that command officers and staff discontinue any such references, or that plaintiff lodged no further complaints regarding such behaviors following this action. Significantly, none of the alleged offensive incidents are demonstrated to be related to plaintiff's discharge.

As a related matter, plaintiff disputes that direct evidence of animus requires that discriminatory remarks be made by the decisionmaker. Direct evidence has been defined to exclude "stray remarks in the workplace, "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse v Hopkins*, 490 US

---

[1] "Federal caselaw is not binding precedent, but may be persuasive." *Young v Indep Bank*, 294 Mich App 141, 145 n 1; 818 NW2d 406 (2011).

-6-

228, 277; 109 S Ct 1775; 104 L Ed 2d 268 (1989) (O'CONNOR, J., concurring).[2] "However, direct evidence may include employer remarks that reflect a discriminatory attitude, . . . or that demonstrate a discriminatory animus in the decisional process." *Kneibert v Thomson Newspapers, Mich, Inc*, 129 F3d 444, 452 (CA 8, 1997) (citation and internal quotation marks omitted). As explained in *Sniecinski*, 469 Mich at 135-136 n 8 (citations omitted):

> Factors to consider in assessing whether statements are "stray remarks" include: (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision.

The difficulty encountered by plaintiff is his inability to link the alleged comments to the decision making process or to counter testimony presented by defendants that upon learning of the meaning of the term "AJ" in reference to plaintiff, that Collins took steps to discontinue its usage. Further, at the time the alleged discriminatory statements were made plaintiff had not been subjected to an adverse employment action, and Collins was not the decisionmaker. At the relevant time periods, Collins was in the role of captain and did not assume the mantle of Chief of Police until August of 2010, after the June 24, 2010, incident and plaintiff's layoff. Plaintiff's complaints regarding the alleged discriminatory comments that occurred in 2008 and 2009 lack any temporal contiguity to his discharge in January of 2011.

In addition, plaintiff cannot rely on comments by his fellow police officers because they were his peers and not his employer and had no demonstrable part in plaintiff's discharge. At most, Casey O'Loughlin, while acting in a supervisory role, engaged in comments alleged by plaintiff to demonstrate discriminatory animus and was also involved in the investigation regarding the June 24, 2010, police pursuit.

Reliance by a decisionmaker on racially motivated input from a subordinate employee can, in some cases, result in employer liability for the racism exhibited by the subordinate. The imputation of liability to a principal premised on the racial animus of a nondecisionmaker is generally recognized as the "cat's paw" or "rubber stamp" doctrine. In accordance with this model, a plaintiff attempts "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v Proctor Hosp*, 562 US 411, 415; 131 S Ct 1186; 179 L Ed 2d 144 (2011). "When a decision to fire is made with no unlawful animus on the part of the firing agent, but partly on the basis of a report prompted

---

[2] "*Price Waterhouse v Hopkins*, 490 US 228; 109 S Ct 1775; 104 L Ed 2d 268 (1989), was superseded by the Civil Rights Act of 1991, Pub L No 102-166, § 107, 105 Stat 1071, 1075 (1991) (codified at 42 USC § 2000e-2), which provides that the complaining party establishes unlawful employment practice by demonstrating that race, color, religion, sex, or national origin was a motivating factor in the employment decision, even if other factors also motivated the decision." *Hodgdon v Mt Mansfield Co, Inc*, 160 Vt 150, 161 n 4; 624 A2d 1122 (1992).

(unbeknownst to that agent) by discrimination, discrimination might perhaps be called a 'factor' or a 'causal factor' in the decision." *Id*. at 418–419. The imposition of liability, however, continues to remain contingent on proximate causation, which necessitates a direct relationship between the adverse employment action and the conduct alleged. Specifically:

> Animus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct. So long as the agent intends, for discriminatory reasons, that the adverse action occur, he has the scienter required to be liable. . . . And it is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm. Proximate cause requires only "some direct relation between the injury asserted and the injurious conduct alleged," and excludes only those "link[s] that are too remote, purely contingent, or indirect." We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias "remote" or "purely contingent." The decisionmaker's exercise of judgment is also a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. [*Id*. at 419 (citations omitted).]

The problem with plaintiff's implication of influence by O'Loughlin or others is the absence of any evidence that they participated or contributed in a direct manner to Collins's decision to discharge plaintiff. In his review of the June 2010 pursuit, O'Loughlin directed criticism to all of the officers involved in the pursuit (Kenneth Jaklic, Andrew Wurm and plaintiff), but the review contained no recommendations regarding disciplinary action for any of the officers. Further, O'Loughlin's review was provided to William Wilson, and not directly to Collins, and there is no evidence that O'Loughlin was afforded the opportunity to participate in or influence the decision by Collins to terminate plaintiff's recall seniority. Absent any evidence of proximate causation, plaintiff has failed to establish the existence of a legitimate factual dispute regarding whether the racial or religious animus alleged to have been demonstrated by O'Loughlin and others in the workplace constituted a motivating factor in the adverse employment action taken by Collins, rendering plaintiff's claim of discrimination to be without merit.

This, in turn, leads to plaintiff's contention that he was subjected to disparate treatment premised on religious discrimination because other police officers either failed to receive discipline or received substantially lesser disciplinary consequences for similar infractions of departmental policies and procedures. In order to demonstrate a prima facie case of disparate treatment employment discrimination, plaintiff is required to demonstrate that "others similarly situated and outside the protected class [of which plaintiff is a member] were not affected by the [employer's] adverse [employment action]." *Town*, 455 Mich at 695. An employee is deemed to be similarly situated to plaintiff if "all of the relevant aspects of the [other employee's] employment situation were nearly identical to those of the plaintiff's situation." *Smith v Goodwill Indus of West Mich, Inc*, 243 Mich App 438, 449; 622 NW2d 337 (2000) (quotation marks and citations omitted). Requiring a demonstration that "all relevant aspects" are nearly identical has not been found to require "an exact correlation" between the employment situations. *Ercegovich v Goodyear Tire & Rubber Co*, 154 F3d 344, 352 (CA 6, 1998) (citation

omitted). Instead, "the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in all of the relevant aspects." *Id*. (emphasis in original, citation omitted); see *Town*, 455 Mich at 699-700; *Smith*, 243 Mich App at 449. Although courts are charged with making a case-by-case evaluation on this aspect, "to be deemed 'similarly-situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Ercegovich*, 154 F3d at 352 (citation omitted).

In support of his assertion of disparate treatment, plaintiff identifies innumerable incidents of disciplinary action pertaining to other officers, much of which is not comparable. To be deemed "similarly situated," the same type of misconduct must be demonstrated. See *Venable*, 253 Mich App at 484 ("[T]he similarly situated individuals plaintiff points to did not engage in such conduct after the policy was announced, as plaintiff did. Nor was their conduct as egregious as plaintiff's."). Hence, misconduct by officers that did not involve on-duty violations of defendants' pursuit and lethal force policies are not "similarly situated," thereby eliminating a number of plaintiff's alleged comparisons. Using the information and comparisons compiled by plaintiff does not serve to further his cause. For incidents preceding the June 24, 2010, pursuit, plaintiff identifies four separate instances of pursuit violations resulting in discipline involving plaintiff and three other officers. All of the officers received an oral reprimand, thus failing to establish any disparate treatment historically for such violations between plaintiff and his fellow officers.

With regard to the January 24, 2010, incident, plaintiff was terminated while Wurm received an oral reprimand for ramming the suspect's vehicle. Jaklic and Wurm did not receive any disciplinary action for purportedly failing to notify dispatch of the suspect's identity, providing misinformation to dispatch regarding the suspect's vehicle purposefully striking a patrol car, or failing to ask permission to leave the city of Ferndale. Plaintiff goes further to suggest that Wurm was not disciplined for also engaging in caravanning and overtaking another police vehicle, implying disparate treatment. The problem, however, is that these allegations by plaintiff are not based on the factual findings or charges levied as a result of the investigation that ensued after the incident. Plaintiff also ignores differences in tenure or seniority with these officers and the extent and resultant outcome of their errors in the pursuit when compared to those committed by plaintiff, which resulted in the suspect's death. Investigation of the incident led to the conclusion that plaintiff improperly engaged in caravanning and overtaking the other officers' patrol vehicles during the pursuit. Wurm was orally reprimanded for striking the suspect's vehicle during the pursuit, but Wurm's behavior or misconduct did not result in the death of the suspect, which was attributed to plaintiff's actions of aggressively placing himself into the pursuit, contrary to policies and procedures on which he had been specifically counseled in the past. As such, plaintiff is unable to demonstrate that he was similarly situated to the individuals identified or any evidence of discrimination.

Plaintiff also asserts a claim for retaliatory discharge under the CRA. Establishment of a prima facie case of retaliation under MCL 37.2701, requires a plaintiff to demonstrate: "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal

connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). "To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett*, 245 Mich App at 315. To establish causation in a claim of retaliation, "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg*, 472 Mich at 286 (citation omitted). A protected activity is defined to include opposition to a violation of the CRA, initiating a charge under the CRA, filing a complaint under the CRA, or participating in a proceeding, investigation or hearing under the CRA. MCL 37.2701(a); *Barrett*, 245 Mich App at 318.

If a plaintiff is able to establish a prima facie case of retaliation,

> the burden shifts to the defendant to articulate a legitimate business reason for the discharge. If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for the discharge. [*Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000).]

"A plaintiff can prove pretext either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 281.

In the circumstances of this case, plaintiff complained to supervisory personnel regarding the alleged discriminatory statements and behaviors experienced from coworkers in his response to disciplinary proceedings against him for misconduct in 2008 and 2009. Plaintiff admits that he did not routinely verbalize to individuals in authority at work that such incidents were occurring or that he found them to be offensive. Even when plaintiff complained of certain behaviors, he refused to identify the perpetrators or to indicate the continuing or ongoing nature of the alleged conduct. Plaintiff also provides no evidence to dispute Collins's testimony that upon learning of the disparaging references to plaintiff, steps were initiated to halt their use. As such, there is little evidence to support a claim of retaliation.

Plaintiff's participation in a protected activity was limited, given the absence of his complaints to the comments or behaviors and the restricted nature of two occasions during which plaintiff did verbalize his concerns. In turn, this limited defendants' alleged awareness of plaintiff's issues with the conduct alleged and did not afford defendants the opportunity to address plaintiff's concerns. While it is undisputed that plaintiff was subject to an adverse employment action, he has not established any causal connection between the protected action (his complaints) and his discharge. His complaints occurred in 2008 and 2009, while his discharge took place in early 2011. Hence, there is even a lack of any discernable temporal connection between the protected conduct and the discharge. See *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed."). Similarly, plaintiff has failed to establish "that his participation in activity protected by the CRA was a 'significant factor' in the employer's

-10-

adverse employment action[.]" *Barrett*, 245 Mich App at 315. The reasons provided for plaintiff's discharge pertained to his violation of police pursuit and use of lethal force policies and procedures. There is no demonstration or evidence to suggest that his complaints regarding disparaging comments or behaviors occurring at least two years before his discharge comprised a factor, let alone a "significant factor" in the adverse employment decision.

In summary, plaintiff failed to provide direct or circumstantial evidence of discrimination or disparate treatment to support his claims brought pursuant to the CRA. Plaintiff was unable to demonstrate pretext and failed to controvert defendants' legitimate, nondiscriminatory reasons for his discharge. Similarly, plaintiff could not establish that his discharge was in retaliation for having engaged in a protected activity. Thus, the grant of summary disposition by the trial court in favor of defendants was not in error.

## II. STATUTE OF LIMITATIONS AND ADMISSIBILITY

Plaintiff contends that regardless of this Court's determination regarding the applicability of the statute of limitations in precluding his claims regarding specific incidents of discrimination, evidence of prior acts of alleged discrimination occurring outside the limitations period remain admissible to demonstrate a pattern of defendants' discriminatory actions and behavior.

"This Court reviews a trial court's decision to admit evidence for an abuse of discretion; however, when the trial court's decision involves a preliminary question of law, such as whether a statute precludes the admission of evidence, a de novo standard of review is employed." *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 275-276; 730 NW2d 523 (2006). "An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

Initially, we note that plaintiff fails to cite any law or authority in support of his contention and argument. "This Court will not search for authority either to sustain or reject a party's position. Where a party fails to cite any supporting legal authority for its position, the issue is effectively abandoned." *Schellenberg v Rochester Mich Lodge No 2225, of Benevolent & Protective Order of Elks of USA*, 228 Mich App 20, 49; 577 NW2d 163 (1998). Further, because we find the grant of summary disposition in favor of defendants on plaintiff's claims regarding violation of the CRA to not have been in error, plaintiff's issue regarding the admissibility of evidence is effectively rendered moot. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights.").

## III. COLLATERAL ESTOPPEL OF ARBITRATION FINDINGS

Plaintiff next contends that he is not collaterally estopped from challenging the arbitrator's factual findings regarding his position as the third car and other violations of the Ferndale Police Department policies in the June 24, 2010, police pursuit, ultimately upholding defendants' reasons for his discharge.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). In conjunction with one of plaintiff's motions for sanctions, the parties argued plaintiff's status as a party in the arbitration and the finality of the arbitrator's factual determinations. In their motion for summary disposition, defendants argued that the arbitrator found just cause to uphold plaintiff's termination and that plaintiff never raised issues regarding discrimination during the arbitration. Defendants also challenged any claim of pretext by plaintiff premised on the arbitrator's opinion and affirmation of plaintiff's termination. While briefly acknowledging defendants' argument regarding collateral estoppel, the trial court never discussed or ruled on the issue of collateral estoppel with regard to the arbitrator's findings. The issue is not preserved for appellate review. Moreover, this issue, too, is rendered moot by our affirmation of the trial court's ruling in granting summary disposition in favor of defendants. See *B P 7*, 231 Mich App at 359 ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief."). We therefore decline to address it.

## IV. ATTORNEY FEES AND COSTS AS DISCOVERY SANCTIONS

Plaintiff contends it was error for the trial court to award him indeterminate costs and attorney fees, but fail to delineate the specific award and grant a sum certain. According to plaintiff, the matter should be remanded to the trial court to finalize the monetary award, despite the grant of summary disposition in favor of defendants.

"This Court reviews a trial court's imposition of discovery sanctions for an abuse of discretion. This Court reviews a trial court's decision to award attorney fees for clear error and reviews the award itself for an abuse of discretion. This Court reviews an award of costs for an abuse of discretion." *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 697; 662 NW2d 804 (2003).

Initially, it is noteworthy that plaintiff has failed to cite to any law in support of his position on this issue. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. Although plaintiff's failure to properly address the merits of his position through the provision of relevant legal authority constitutes an abandonment of the issue, we address the matter for thoroughness.

The trial court initially granted, in part, plaintiff's request for discovery sanctions against defendants for the failure to provide requested materials before plaintiff conducted various depositions. While defendants did provide materials pertaining to plaintiff's discovery requests, the trial court determined that plaintiff would be permitted to again depose certain identified individuals and awarded $5,000 to plaintiff to compensate for the additional expenses incurred. Plaintiff filed another motion for sanctions allegedly pertaining to "providing false answers . . . [n]ot providing documents. . . ." The trial court determined that any lack of compliance with discovery requests received by defendants was the result of the slow production of documents and not a "willful" violation of discovery. The trial court, denying plaintiff's request for default,

acknowledged that "the slowness and the issues of getting things in a timely fashion does affect the plaintiff, so the sanction that the court will grant is a monetary one." Plaintiff was instructed to provide a detailed bill of costs or accounting regarding the hours spent "as it relates to the renewed depositions." A written order memorializing the trial court's ruling and granting the request for sanctions "in the form of attorney fees and costs, the amount of which the Court has taken under advisement," was entered on September 11, 2015. Although plaintiff did submit a supplemental motion seeking $22,253.40 in sanctions, the trial court never ruled or determined the amount deemed appropriate as sanctions and plaintiff's claims were ultimately dismissed, in their entirety, on November 30, 2015, without further reference to this earlier ruling. Contrary to defendants' assertion on appeal, the order granting sanctions is not related to and occurred before plaintiff's later motion seeking sanctions for spoliation of evidence.

The issue before this Court on appeal is not whether the trial court's determination that plaintiff was entitled to a monetary award as sanctions for discovery violations was in error. Rather, the problem confronted is the trial court's determination and issuance of a written order finding that a monetary award would be appropriate, but reserving a determination of an amount pending an ability to review a detailed bill of costs to ascertain what amount, if any, was owed to plaintiff. As such, the trial court's ruling is incomplete and requires finality.

"[A] court speaks through its written orders and judgments, not through its oral pronouncements." *City of Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 682; 873 NW2d 342 (2015) (citation omitted). The trial court's written order of September 11, 2015, indicated that the trial court was taking the issue of sanctions under advisement and was granting plaintiff's request for a monetary award, pending its review of a bill of costs submitted by plaintiff, which was provided. Despite providing the requested data to the trial court to determine plaintiff's entitlement to any monetary compensation, the case was dismissed in favor of defendants without resolution or finality with regard to its September 11, 2015 order. A trial court routinely seeks to balance the competing goals "of remedying injustice, on the one hand, and the desire to achieve finality in litigation, on the other." *Muntean v City of Detroit*, 143 Mich App 500, 511; 372 NW2d 348 (1985) (citation omitted). In this instance, the trial court ruled that plaintiff might be entitled to the receipt of attorney fees and costs incurred by defendants' untimely provision of discovery materials, but never finalized its ruling regarding either the necessity of an award upon review of plaintiff's billings or determined an amount to be awarded. As such, the trial court recognized the possibility of an injustice necessitating a monetary award in compensation for the inconvenience and expenses incurred, but never finalized its ruling.

It is well-settled, as public policy, that finality of judgments is favored. *King v McPherson Hosp*, 290 Mich App 299, 304-305; 810 NW2d 594 (2010). The trial court ruled that plaintiff would be entitled to monetary damages as discovery sanctions upon the demonstration of costs or fees incurred but did not subsequently finalize that ruling through either a specific award or a reversal of its initial decision. As such, the matter is remanded to the trial court for a final dispositional ruling regarding plaintiff's entitlement to a monetary award following a review of his bill of costs and the amount, if any, deemed necessary to be awarded.

V. PROPER PARTY

Plaintiff challenges the trial court's ruling dismissing the Ferndale Police Department as a defendant in this litigation, asserting that it is a proper party. Defendants argued that the Ferndale Police Department was not a proper party because it was not a legal entity capable of being sued. The trial court concurred, indicating the failure of plaintiff to cite or reference any authority in support of his position and finding that the Ferndale Police Department "is not a proper party to this action, and therefore," was subject to dismissal in accordance with MCR 2.116(C)(8).

As discussed in *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 620-621; 873 NW2d 783 (2015):

> A motion for summary disposition asserting as its basis the doctrine of standing invokes a prudential doctrine that "focuses on whether a litigant 'is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable.' " "A motion based on such a defense would be within MCR 2.116(C)(8) or MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." [Citations omitted.]

In this instance, the trial court dismissed the Ferndale Police Department as a party to this action premised on MCR 2.116(C)(8). Accordingly:

> A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews . . . a motion [for summary disposition] under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. All factual allegations supporting the claim, and any reasonable inference or conclusions that can be drawn from the facts, are accepted as true. [*Lawrence*, 314 Mich App at 211 (citations omitted).]

The Ferndale Police Department was entitled to dismissal. A city's police department does not comprise a separate legal entity, against which a lawsuit can be maintained. See *Moomey v City of Holland* 490 F Supp 188, 190 (WD Mich, 1980), citing MCL 92.1[3] (a city's police department "is merely a creature of the [c]ity, the real party in interest."); see also *Haverstick Enterprises, Inc v Fin Fed Credit, Inc*, 803 F Supp 1251, 1256 (ED Mich, 1992), aff'd 32 F3d 989 (CA 6, 1994) ("the police department is not a legal entity against whom a suit

---

[3] MCL 92.1 states: "The council of any city may provide, by ordinance, for a police force and for the appointment by the mayor of such number of policemen and nightwatchmen as they may think necessary for the good government of the city and for the protection of the persons and property of the inhabitants; and may authorize the mayor to appoint special policemen from time to time, when in his judgment the emergency or necessity may so require."

can be directed.").[4]  As explained in *McPherson v Fitzpatrick*, 63 Mich App 461, 463-464; 234 NW2d 566 (1975):

> The management, operation and control of its police department is a municipal function.  The formation of any city department, be it water, fire or police, together with its rules, regulations and department heads and administrators, is only a means of promoting the efficient operation of the municipality.  A municipal department, board or commission, such as the Detroit Police Department, is unable to raise funds for payment and is not liable in tort.  Therefore, the police department is not liable in a tort action directed solely against said department. . . .  [Citations omitted.]

This is further supported by MCR 2.201(C), which addresses the "capacity to sue or be sued," and states in subrule (5):

> Actions to which the state or a governmental unit (including but not limited to a public, municipal, quasi-municipal, or governmental corporation, an unincorporated board, a public body, or a political subdivision) is a party may be brought by or against the state or governmental unit in its own name, or in the name of an officer authorized to sue or be sued on its behalf.  An officer of the state or governmental unit must be sued in the officer's official capacity to enforce the performance of an official duty.  An officer who sues or is sued in his or her official capacity may be described as a party by official title and not by name, but the court may require the name to be added.

Hence, because "[a] suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest," the trial court did not err in dismissing the Ferndale Police Department.  *Haverstick Enterprises, Inc*, 32 F3d at 992 n 1, citing *Michonski v City of Detroit*, 162 Mich App 485, 490; 413 NW2d 438 (1987).


VI.  CONCLUSION

We affirm the trial court's grant of summary disposition in favor of defendants, but remand this matter to the trial court solely for the purpose of finalizing a determination of

---

[4] "[F]ederal case law can only be persuasive authority, not binding precedent, in resolving the present case, which involves only questions of state law." *NL Ventures VI Farmington, LLC*, 314 Mich App at 237 n 3, quoting *Sharp v City of Lansing*, 464 Mich 792, 803; 629 NW2d 873 (2001).

plaintiff's entitlement to an award of attorney fees and costs for discovery violations by defendants. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michael J. Riordan